Robert 0. Brink, J.
This is a motion for summary judg-
ment in an action brought by the plaintiff against the defendant to recover compensation for nursing home care furnished public welfare recipients of the County of Tioga during the period between July 1, 1967 and ending December 15, 1967, inclusive. The plaintiff seeks to recover the sum of $66,976. Defendant’s answer admits the alleged care of welfare recipients but further alleges that the correct amount due the plaintiff is $45,032.17. The latter amount was paid the plaintiff pursuant to stipulation, whereby the payment was made and accepted without prejudice to plaintiff’s right to pursue the action and seek to recover the additional amount claimed to be due.
The controversy between the parties arises from a difference in the daily rate. In his complaint, the plaintiff seeks to recover the sum of $12 per day. It is the contention of the defendant that the plaintiff is bound by the State-mandated rate of $259 per month, or $8.52 per day, and that it cannot legally pay any additional amount. Section 2807 of the Public Health Law provides, among other things, that no governmental agencies shall purchase, pay for or make reimbursements or grants-in-aid for any hospital or health related service at rates other than those approved by the State Director of the Budget.
After receiving delayed statistical and financial data from the plaintiff, the Health Department of the State of New York wrote to the Tioga Commissioner of Public Welfare and the plaintiff on June 2, 1967, and advised them that a rate of $259 per month would be effective for the period from January 1, 1967 through June 30, 1967. On June 9, 1967, the plaintiff wrote to the County Commissioner of Social Services and advised him that as of July 1, 1967, the rate for welfare and medicare patients would be $12 per day, stating that “ if there are any welfare patients left in my care after that date, I am *605 taking it for granted that the rate is satisfactory to you.” On August 14, 1967, the Commissioner of Health of the State of New York certified to Dr. T. Norman Hurd, the Director of the Budget, the proposed rate schedule for each nursing home in the State of New York, for the period July 1, 1967 to June 30, 1968, which rates were approved by the Director. The rate for the G-lenmary Nursing Home was fixed at $8.52 per day. The plaintiff has already been paid the daily rate of $8.63 per day, slightly in excess of the authorized amount, but this discrepancy has been waived. Plaintiff took care of the welfare patients after July 1, 1967 and did not attempt to have them removed. The Commissioner of Public Welfare of Tioga County submitted vouchers as in the past on the State-established rate, but the plaintiff refused to sign the same.
On October 16, 1967, the plaintiff wrote to the Commissioner of Welfare that his appeal to the State had been denied and that all welfare patients should be removed by November 1,1967. On November 17, 1967 plaintiff sent a notice to the County Board of Supervisors that he intended to surrender his operating certificate 30 days from .said date, after which he gave notice to the individual patients. The welfare patients were removed by the department on December 15, 1967 and sent to a nursing home in Broome County.
Plaintiff’s cause of action is based upon a contention that there was an implied contract which arose after he had advised the county that the rate commencing July 1, 1967, would be $12 per day, following which the county left the patients in the nursing home. Hnder certain circumstances a contract may be implied from the conduct of the parties. However, under the present circumstances, the involved governmental agency was prevented by statute from paying for the care of welfare patients any amount in excess of the amount approved by the State.
It has been held that a Board of Supervisors by resolution could not fix a rate less than that promulgated by the Department of Social Welfare under the Social Welfare Law as it existed in 1966. (Matter of Albany Med. Center Hosp. v. Schreck, 49 Misc 2d 1011.) If a municipal corporation is without power to enter into an express contract in relation to a particular subject, it is equally without power to bind itself upon an implied contract as to the same subject by any acts of its officers, agents or employees. (40 N. Y. Jur., Municipal Corporations, § 823, p. 139; Seif v. City of Long Beach, 286 N. Y. 382; Lutzken v. City of Rochester, 7 A D 2d 498.)
*606 In Casella v. City of Schenectady (281 App. Div. 428, 432), it was held that ‘ ‘ The fact that the city accepted the benefit of the plaintiff’s services does not entitle him to recover in quasi contract. Recovery may be allowed against a municipality in quasi contract for benefits received under an unenforceable contract where the invalidity of the contract was due to a mere irregularity or a technical violation # * but where the making of the contract flouted a firm public policy or violated a fundamental statutory restriction upon the powers of the municipality or its officers, recovery in quasi contract is uniformly denied.”
It is the opinion of this court that the defendant is entitled .to a judgment dismissing plaintiff’s complaint on the law insofar as it seeks to recover damages in' excess of $45,032.17, the amount already paid by the defendant.